**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

| | | |
|---|---|---|
| **MEMPHIS HOUSING AUTHORITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case 2:14-cv-02397** |
| **AMERICAN  GUARANTEE** | ) | |
| **AND LIABILITY INSURANCE COMPANY,** | ) | **Judge Samuel H. Mays, Jr.** |
| | ) | **Magistrate Judge Tu M. Pham** |
| **Defendant.** | ) | |
| _____ | ) | |
| | ) | |
| **AMERICAN GUARANTEE** | ) | |
| **AND LIABILITY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Counterclaimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MEMPHIS HOUSING AUTHORITY,** | ) | |
| | ) | |
| **Counterdefendant** | ) | |

**MOTION FOR SPOLIATION JURY INSTRUCTION**
**OF MEMPHIS HOUSING AUTHORITY**

COMES NOW the Plaintiff, Memphis Housing Authority ("MHA"), by and through counsel of record, and move this Honorable Court for a spoliation jury instruction to be read to the jury at the close of proof at the trial of this matter. In support of said Motion, the Plaintiff would show:

**FACTS**

On October 29, 2001, MHA retained Scruggs Security & Patrol ("Scruggs"), a private security company, to provide security services at Jefferson Square, a residential building owned and operated by MHA.  The Agreement for Security Services between MHA and Scruggs took effect on November 1, 2001, and pursuant to the Agreement, Scruggs was to obtain an insurance

1

policy and name MHA as an additional insured on said policy.  *See ECF 25-1.*  On or about July

15, 2001, American Guarantee and/or Zurich issued an insurance policy to Scruggs relating to

Scruggs' security and patrol business.  The policy issued by American Guarantee states:

> We will pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' caused by an 'occurrence' that takes place during the policy period in the 'coverage territory,' or caused by the errors or omissions related to 'security guard operations' that take place during the policy period in the 'coverage territory.'

*See Section I(1)(a) of the Commercial General Liability Security Guard Errors and Omissions*

*Policy, ECF 25-29.*  The policy also expressly states that liability assumed under an insured

contract is covered by the policy.  *See Section I(2)(b) of the Commercial General Liability*

*Security Guard Errors and Omissions Policy, ECF 25-29.*

MHA's claim for indemnity and defense and Scruggs counter-claim for indemnity and

defense are based on the contract of insurance between Scruggs and American Guarantee.  *See*

*Commercial General Liability Policy between Scruggs and Zurich, ECF 25-29.*  Specifically,

MHA claims it is owed coverage under the policy of insurance issued to Scruggs.

On January 16, 2015, counsel for MHA took the deposition of Timothy McDaniel, the

Rule 30(b)(6) designee of American Guarantee.  The transcript of Mr. McDaniel's deposition has

been filed with this Court.  (ECF 64-1, 2).  Mr. McDaniel testified to the following:

  a.  American Guarantee and/or Zurich have never denied MHA's tender of defense and indemnity.

> A.  I understand that – my understanding is, is that MHA is – there has never been a denial of coverage, and that MHA is not an additional insured on the policy.  And this is a dispute over the contractual obligation between Scruggs and MHA.

> McDaniel Dep., ECF 64-1, 2, 19:17-22.

  b.  American Guarantee did not act in accordance with its own claims policies when it ignored MHA's tender of defense and indemnity for two years.

> Q.  Is it common practice at Zurich to simply ignore demands for indemnity and defense when those are made?
> A.  Not to my knowledge.

McDaniel Dep., ECF 64-1, 2, 87:11-15.

Q.  You don't know whether it's proper for Zurich to ignore tenders of defense and indemnity under an insured contract with one of your insureds?
A.  Well, I don't think she ignored it.
Q.  I didn't ask if she ignored it.  I asked you if the proper thing to do is to ignore it?
A.  You're assuming that's what she did.
Q.  I'm not assuming anything.  I'm asking –
A.  No.  It's not proper to ignore it.

McDaniel Dep., ECF 64-1, 2, 98:5-19 (objections omitted).

Q.  Have you ever seen a letter where [Zurich claims adjuster] Ms. Cooper responded to MHA's tender of 6 – of May 30th, 2002?
A.  I don't recall specifically.

McDaniel Dep., ECF 64-1, 2, 98:23-99:1.

Q.  Right.  And you're the corporate designee.  I'm asking you if Zurich's ordinary and customary practice, when it receives a letter like this May 30th, 2002, Jane McLaughlin, Tenco, tender of defense, to fail to respond to it?
A.  No.
Q.  Okay.  That would be out of the ordinary, correct?
A.  Yes.

McDaniel Dep., ECF 64-1, 2, 99:18-100:4 (objections omitted).

Q.  Do you know of any -- have you seen any response from Zurich to this July 24th, 13 2002, tender of defense?
A.  I don't recall specifically, no.
Q.  Same question. If you were handling the claim, you would have responded to that letter, wouldn't you?
A.  Yes.

McDaniel Dep., ECF 64-1, 2, 104:11-18.

Q.  I've got another letter, October 15, 2002.  We'll make this Exhibit 8.  Is it once again Ms. McLaughlin writing Ms. Cooper tendering defense of the indemnity of the underlying claims?
A.  Yes.
Q.  This is October 15, 2002?
A.  Yes.
Q.  Have you ever seen any written response to this letter?
A.  No.

McDaniel Dep., ECF 64-1, 2, 105:25-106:15.

> Q.  Now I'm going to pass you an April 6, 2004, letter.  This is two years later.  This one is not signed because that's how they kept copies back then.  This is from me, also Ms. Cooper, April 6, 2004, correct?
> A.  Yes.
> Q.  Is it also another tender of defense and indemnity under the insured contract – or actually, yeah, under the insured contract to Zurich?
> A.  Yes.
> Q.  Now, have you seen a response to this letter?
> A.  To this specific letter, no.

McDaniel Dep., ECF 64-1, 2, 106:16-107:4.

> Q.  And this is not -- waiting two years to respond to a tender of defense and indemnity under an insured contract is not the way you would handled this, is it?
> A.  No, I don't think.

McDaniel Dep., ECF 64-1, 2, 102:20-24.

c.  On December 11, 2012, the Zurich claims adjuster could not locate the insuring agreement between Zurich and American Guarantee.  The only thing the adjuster could locate was 18 pages of endorsements and declarations.

McDaniel Dep. ECF 64-1, 2, 232:8-233:9.

d.  The documents sent to Memphis Housing Authority on December 20, 2012 were not the insuring agreement.

McDaniel Dep., ECF 64-1, 2, 233:6-9.

e.  American Guarantee and/or Zurich knew that the documents sent on December 20, 2012 were not the insuring agreement when it sent same to Memphis Housing Authority.

McDaniel Dep., ECF 64-1, 2, 233:10-18; 234:10-235:8.

f.  The underwriting file, which would likely contain the application for insurance coverage filled out by Scruggs Security and Patrol, LLC, cannot be found.  This is uncommon and not the practice of American Guarantee;

> Q. An application would be the thing that the insured fills out saying -- well, giving all sorts of information for the insurance carrier to use to determine premiums?
> A. Yes.
> Q. In fact, the carrier relies on those things being truthful, correct?
> A. Yeah. I think that's a fair statement.
> Q. And we're missing that application, correct?
> A. I have not seen an application. I don't know if it exists or not.

McDaniel Dep., ECF 64-1, 2, 233:10-18; 234:10-235:8.

4

> Q.  I'm not asking if something could have been purged or lost.  I'm asking that ordinarily in the usual course of Zurich's business in issuing a policy like the Scruggs policy, it keeps the application the insured fills out, doesn't it?
> A.  I would think so, yeah.

McDaniel Dep., ECF 64-1, 2, 233:6-9.

g.  The underwriting file would contain information regarding what coverages where requested and purchased by Scruggs Security and Patrol, LLC;

> Q.  Have you personally searched for the underwriting file?
> A.  No.
> Q.  But it's been search for apparently?
> A.  According to what I read in the file, yes.
> Q.   Where it is, it would contain information about what coverages were purchased by Scruggs and asked for by Scruggs, right?
> A.  I would think so, yes.

McDaniel Dep. ECF 64-1, 2, 131:25-132:11.

## LAW

All parties have a duty to preserve evidence prior to litigation[1] when a party reasonably should know that the evidence may be relevant to anticipated litigation. *See generally Kronisch v. United States,* 150 F.3d 112 (2d Cir. 1998) (overruled on other grounds by *Litle v. Arab Bank, PLC,* 2007 U.S. Dist. LEXIS 20539 (E.D.N.Y. Mar 22, 2007). When a party who reasonably knows evidence may be relevant to litigation intentionally destroys, mutilates, alters, or conceals evidence, spoliation has occurred. *See Black's Law Dictionary* 1531 (9th ed. 2009).  The federal law of spoliation governs cases filed in federal court.  *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Courts recognize that concealing evidence amounts to spoliation. *Bronson v. Umphries*, 138 S.W.3d 844, 854 (Tenn. Ct. App. 2003).

A party seeking sanctions based on spoliation of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the records were destroyed with a culpable state of mind, and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of

---

[1] This evidence was disposed of <u>during</u> the relevant litigation.

fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-12 (2d Cir. 2001)).  The spoliating party bears the burden of establishing lack of prejudice to the opposing party, a burden the Sixth Circuit has described as "an uphill battle." *Austral-Pacific Fertilizers, Ltd. v. Cooper Industries, Inc.*, 1997 U.S. App. LEXIS 5383, at *13 (6th Cir. Ohio Mar. 18, 1997).

Once the moving party satisfies these factors and proves spoliation has occurred, the district court has "inherent power to craft proper sanctions for spoliated evidence." *Adkins,* 554 F.3d at 651. "Because failures to produce relevant evidence fall 'along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality,' the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id* at 652-53 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), *overruled on other grounds by Adkins*, 554 F.3d 650). A district court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* at 653 (emphasis added).

Where there is actual prejudice, the sanction should serve "prophylactic, punitive, and remedial" objectives to cure the spoliation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. N.Y. 1999). In other words, the court should employ a sanction which will achieve the following purposes: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (citations omitted).  The severity of the sanction should correspond to the actual prejudice suffered by the party who has been denied discovery. *Austral-Pacific Fertilizers,* 1997 U.S. App. LEXIS 5383 at *13. An adverse inference for evidence spoliation is appropriate if the Defendants "knew the evidence was relevant to some issue at trial and . . .

[their culpable] conduct resulted in its loss or destruction." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

## ARGUMENT

The Plaintiff now asks the Court to instruct the jury that it may infer that the missing underwriting file contains documents, including the application for insurance, which indicate that Scruggs Security & Patrol informed American Guarantee and/or Zurich of its insured contract with MHA and requested coverage for MHA under the policy issued by American Guarantee and/or Zurich.   The Court has inherent power to craft sanctions for spoliation including an adverse jury instruction. *Adkins*, 554 F.3d at 651, 653. To be entitled to this instruction, the Plaintiff must show that (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp.*, 306 F.3d at 107.

A.      The Defendant had an obligation to preserve the underwriting file.

"An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation . . ." *Beaven v. United States DOJ*, 622 F.3d 540, 553 (6th Cir. 2010).

It is clear that American Guarantee/Zurich knew, or should have known, that the underwriting file, which contained the application for the insurance policy at issue, would be relevant to future litigation.  The insurance policy in question was issued to Scruggs on July 15, 2001.  The incident leading to this litigation occurred on March 7, 2002.  On May 30, 2002, an employee of Tenco Services, on behalf of MHA, wrote an employee of Zurich and tendered defense and indemnity of the claim to Zurich.  Clearly, the duty to preserve all documents relating to the insurance policy issued to Scruggs was triggered, at the very latest, on May 30,

2002 when MHA tendered defense and indemnity to Zurich based on the Scruggs' policy.  From that point forward, American Guarantee/Zurich had a duty to preserve all documents related to the insurance policy it issued to Scruggs.  Despite this duty, the underwriting file, which would contain the application filled out by Scruggs, has been lost or destroyed.

B.      Defendants acted with a culpable state of mind in spoliation of the underwriting file.

The second element, a culpable state of mind, requires a showing that the party destroyed the evidence knowingly or negligently. *Beaven* 622 F.3d at 553-554.

Mr. Daniel, the American Guarantee 30(b)(6) representative, testified that it is the ordinary practice of American Guarantee/Zurich to keep the application for insurance filled out by the insured.  McDaniel Dep., ECF 64-1, 2, 74:22-75:3.  In fact, McDaniel testified that the application is used by American Guarantee/Zurich to determine the amount of premiums changed.  McDaniel Dep., ECF 64-1, 2, 233:10-18; 234:10-235:8.  Despite the fact that American Guarantee/Zurich policies require that the insurance application be kept, and that the application is used to determine premiums, the application filled out by Scruggs has disappeared.  This is, at best, negligence.

When a party who reasonably knows evidence may be relevant to litigation intentionally destroys, mutilates, alters, or conceals evidence, spoliation has occurred. *See Black's Law Dictionary* 1531 (9th ed. 2009).

As previously mentioned, the Defendant was aware of the possibility of future litigation and, therefore, had a culpable state of mind in spoliation of the underwriting file.  It is Defendant's policy to retain the application the insured fills out.  McDaniel Dep., ECF 64-1, 2, 74:22-75:3.  Whether Defendant destroyed or concealed this underwriting file is irrelevant; both amount to spoliation of critical evidence.

C.      The underwriting file is relevant to Plaintiff's claim.

8

The Plaintiff has previously asserted in this Motion that the underwriting file is not only relevant to the Plaintiffs claims, but likely is the <u>most</u> relevant piece of evidence in this lawsuit. The underwriting file would likely indicate whether or not Scruggs Security & Patrol informed American Guarantee/Zurich of its insured contract with MHA and whether Scruggs requested coverage for MHA under the insurance policy at issue.  The underwriting file is a crucial piece of evidence which American Guarantee has lost or destroyed.  As the Court noted in *Austral-Pacific Fertilizers, Ltd.*, the Defendants now bears the difficult burden of showing the destruction or concealment of the underwriting file, the very piece of evidence that would likely determine coverage in this case, did not prejudice the Plaintiff.  *Austral-Pacific Fertilizers, Ltd.,* 1997 U.S. App. LEXIS 5383, at *13.

WHEREFORE, the Plaintiff prays that this Honorable Court will instruct the jury as follows: "You are instructed that there is a presumption that evidence willfully suppressed, lost, or destroyed would be, if produced, adverse to the party suppressing or concealing the evidence. This presumption may be rebutted by other competent evidence, but if uncontradicted, the presumption is satisfactory proof of the matter in question."

Respectfully submitted,


By:    /s/ C. Wesly Fowler
       **C. WESLEY FOWLER (#18652)**
       *Attorney for Plaintiff*
       The Fowler Law Firm
       25 Dr. Martin Luther King. Jr. Ave.
       Memphis, TN 38103
       P: (901) 322-8018
       wfowler@wesfowlerlaw.com

## CERTIFICATE OF SERVICE

I, C. Wesley Fowler, do hereby certify that a true and correct copy of the foregoing was served via the Court's ECF system upon the following counsel, this 4th day of February, 2015:

William H. Tate (6797)
Howard Tate Sowell Wilson Leathers & Johnson, PLLC
201 Fourth Avenue North, Suite 1900
Nashville, Tennessee 372119
(615) 256-1125
*Attorney for Defendant*

By: /s/C. Wesley Fowler _____